UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KAREN ANDERSON,

    Plaintiff,

v.                                          Civil No. 05-CV-10265-BC

COMMISSIONER OF                             DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                            MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED, that the FINDINGS OF THE COMMISSIONER BE REVERSED, and the case REMANDED for an award of benefits.

**II.    REPORT**

    **A.     Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

insurance benefits. This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 38 years of age at the time of the most recent administrative hearing and has completed a high school education. (Tr. at 219-20.) Plaintiff's relevant work history included approximately ten years of bartending and waitressing work. (Tr. at 60.)

Plaintiff filed the instant claim on September 5, 2002, alleging that she became unable to work on April 1, 1998. (Tr. at 49-51.) The claim was denied initially. (Tr. at 38.) In denying Plaintiff's claim, the Defendant Commissioner considered multiple sclerosis as a possible basis of disability. (*Id.*)

On May 5, 2004, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Alfred Varga, who considered the case *de novo*. In a decision dated, July 28, 2004, the ALJ found that Plaintiff was not disabled. (Tr. at 193-200.) Plaintiff requested a review of this decision on August 9, 2004. (Tr. at 201.) On September 23, 2004, the Appeals Council remanded the case to the ALJ for further evaluation. (Tr. at 204-06.) On February 2, 2005, Plaintiff appeared with counsel again before ALJ Varga. In a decision dated June 24, 2005, the ALJ found that Plaintiff was not disabled. (Tr. at 11-18.) Plaintiff requested a review of this decision on July 13, 2005. (Tr. at 10.)

The ALJ's decision became the final decision of the Commissioner when, after the review of an additional exhibit[1] (AC-1, Tr. at 214-15), the Appeals Council, on September 14, 2005,

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

denied Plaintiff's request for review. (Tr. at 6-8.) On October 5, 2005, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730

F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

**C.     Governing Law**

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative

review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security. The test is as follows:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

### D.     Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was admitted to St. Joseph Mercy Hospital on April 25, 1998, with headaches associated with numbness in the left arm and leg. (Tr. at 106.) Plaintiff reported that she had left-sided paralysis four days earlier, at which time she was taken to the emergency room, given a CT scan, and then discharged and told to follow up with a neurologist. After admission to the hospital, an MRI was ordered. Plaintiff had significant weakness on the left side and difficulty walking. (*Id.*) The MRI was clearly abnormal and suggested a strong possibility of multiple sclerosis. A spinal tap was performed which was also abnormal with increased white blood cells. Plaintiff was diagnosed with new onset multiple sclerosis. (*Id.*) She was discharged three days later with the understanding that weakness may persist for some time and that she may have relapses. Medication was to be discussed on a follow-up visit with the neurologist. (*Id.*) An echocardiogram performed during Plaintiff's hospital stay showed no obvious cause for Plaintiff's symptoms. (Tr. at 133.)

On February 8, 1999, Plaintiff underwent an MRI of her brain due to her fatigue and weakness. A small lesion was seen on the right side of the brain, but appeared to be somewhat smaller when compared to the MRI performed in April. (Tr. at 141.)

On May 22, 2001, Plaintiff was seen for neurologic evaluation at the Michigan Institute for Neurological Disorders. (Tr. at 182.) Plaintiff reported that she was diagnosed with multiple sclerosis in April of 1998. She reported headaches and numbness in the head in either January of 1999 or 2000. She stated that she had occasional blurred vision with stressful situations and pain in her knees which occasionally caused her left lower extremity to give out. (*Id.*) Plaintiff's blood pressure was 121/75, and physical examination appeared to be normal. (Tr. at 183.) The doctor stated that he would order another MRI, and he gave Plaintiff information on multiple sclerosis. He said he would see her again once she had reviewed the information. (Tr. at 184-85.) Plaintiff underwent an MRI of her brain again on July 2, 2001. Two small abnormalities were identified on the right side, but they were non specific. (Tr. at 154.)

Plaintiff was again seen for neurologic reassessment at the Michigan Institute for Neurological Disorders on August 28, 2001. Plaintiff complained of pain in her knees and the back of her occiput, which occasionally prevented her from sleeping. She stated that her left leg occasionally gave out on her and that fatigue limited her ability to function. Physical examination at this time was normal. Dr. Rossman felt that Plaintiff was having relapsing-remitting multiple sclerosis, and he prescribed symptomatic treatment with Topamax to relieve the neuropathic pain. (Tr. at 179.)

Plaintiff was seen for neurologic reassessment at the Michigan Institute for Neurological Disorders on October 29, 2001. She stated that she was unable to tolerate the Provigil therapy due to stomach upset. She also discontinued Topamax at night because she did not feel it was helping

7

with her discomfort. Examination was normal with no sensory or cerebral abnormalities noted. The doctor reported that preventative immunomodulatory therapy was discussed, but the doctor did not believe she was a candidate for this treatment, as she did not "have at least one documented exacerbation within the last year." (Tr. at 177.) Plaintiff was given a prescription for Avonex with patient information to read, as well as Xanax for anxiety. Plaintiff was to be re-evaluated in one month after starting the Avonex treatment. (*Id*.)

On November 2, 2001, Plaintiff went to Botsford General Hospital emergency room with sharp abdominal pain and nausea. Plaintiff reported that she became ill after eating the night before. Physical examination was normal. (Tr. at 146.) A chest x-ray was normal, and abdomen x-rays revealed a moderate amount of gas within the intestinal tract but no masses or calcifications. (Tr. at 151.) Plaintiff refused an IV of saline and Inapsine. She was given an injection of Demoral and Vistaril, which made her feel somewhat better. Plaintiff was discharged with a diagnosis of abdominal pain of uncertain origin. (Tr. at 146-47.)

A pelvic ultrasound was performed on November 14, 2001, after Plaintiff complained of pain in her pelvis. The uterus was slightly enlarged, and there was a small cystic area, possibly fibroid. (Tr. at 144.)

At the administrative hearing, a vocational expert (VE) testified. He characterized Plaintiff's prior work as a waitress to be unskilled and light in exertion and Plaintiff's prior work as a waitress and bartender to be semi-skilled and medium. (Tr. at 232.) In response to a hypothetical question, taking into account all of Plaintiff's testimony relating to her condition up to the date of the hearing, including descriptions of two exacerbations of her condition, the VE felt that a person in a condition such as that described by Plaintiff would be incapable of undertaking substantial gainful employment. (Tr. at 233-34.) In response to a second hypothetical question,

limiting the VE's consideration to evidence prior to December 31, 2001, and presuming a person able to perform sedentary tasks which did not favor the left hand and required no work at unprotected heights, no driving, climbing or work around dangerous machinery, and which involved simple and routine tasks in a low stress environment, the VE identified sorting and packaging jobs, numbering approximately 5,000 in the Metropolitan Detroit area. (Tr. at 234-35.)

**E.    ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since April 1, 1998. (Tr. at 17.) At step two, the ALJ found that Plaintiff's multiple sclerosis was "severe" within the meaning of the second sequential step. (*Id.*)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform her previous work. (*Id.*) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 18.) Using the Commissioner's grid rules as a guide, the ALJ found that "there are a significant number of jobs in the national economy which she could perform. Examples of such jobs are: visual inspector, sorter, and packager." (*Id.*)

**F.    Analysis and Conclusions**

**1.    Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of sedentary work. (Tr. at 18.)

> Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if

walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. 404.1567(a) (1991). Social Security Ruling (SSR) 83-10 clarifies this definition and provides that:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Before turning to a direct consideration of the evidence, I note at the threshold that in order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423(c)(1)(B)(i). It is improper for an administrative law judge to concentrate on a claimant's abilities and condition at the date of hearing, rather than during the time period when plaintiff met the special earnings' requirements. *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979). In this circuit, to qualify for social

security disability benefits, disability must be proven to exist during the time the plaintiff was insured within the meaning of the special insured status requirements of the Act; and if plaintiff becomes disabled after the loss of insured status, the claim must be denied even though plaintiff has indeed become disabled. *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *see also Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979); *Moon v. Sullivan*, 923 F.2d 1175 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Thus, the only medical evidence relevant to the issue of disability is that medical evidence dealing with a claimant's condition during the period of insured status.

In *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976), the court held, however, "Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time." Directly on point, the sixth circuit held in *Higgs*, 880 F.2d at 863, that the Commissioner must consider medical evidence of a claimant's condition after his date last insured to the extent that the evidence is relevant to the claimant's condition prior to the date last insured.

In this case, the ALJ, after review of Plaintiff's social security earnings' record (Tr at 52-53), concluded that Plaintiff's insured status ended on December 31, 2001. This was the last quarter in which Plaintiff had 20 quarters of contribution within a 40-quarter period. 20 C.F.R. § 404.130(b). The ALJ therefore ruled that only that evidence pertaining to Plaintiff's condition prior to that date could be considered in support of her disability benefits claim.

On the basis of the Social Security Act and the *Estep* case, which controls in this circuit, I conclude that the ALJ properly found that Plaintiff's insured status ceased as of December 31, 2001, and that, therefore, his refusal to consider later medical evidence in determining Plaintiff's entitlement to disability benefits was proper.

11

Turning then to an evaluation of the relevant evidence of record, there is little doubt but that Plaintiff suffers from multiple sclerosis, and the ALJ so found. MS is a progressive disease for which there is, at this time, no cure. On more than one occasion, the sixth circuit has considered MS within the context of the disability requirements set forth in the Social Security Act. In *Parish v. Califano*, 642 F.2d 188 (6th Cir. 1981), Judge Kennedy stated:

> Multiple sclerosis is an incurable, progressive disease subject to such periods of remission and exacerbation. Other courts have recognized both these aspects of disabling diseases in dealing with social security claimants who are victims of multiple sclerosis or similar diseases. *Patton v. Finch*, 305 F. Supp. 810 (W.D.N.C. 1969).

*Id*. at 193. The court went on to reverse the denial of benefits even though plaintiff undertook work and educational activities for an eight-month period, concluding: "Rather, he [the ALJ] should have considered that time-span as merely a period of remission in a continuing disability in making his finding."

In *Wilcox v. Sullivan*, 917 F.2d 272 (6th Cir. 1990), Judge Damon Keith reiterated this analysis. After citing *Parish*, he stated:

> Furthermore, in evaluating multiple sclerosis, or any other episodic disease, consideration should be given to the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities.
>
> *Parish* is controlling precedent in the present case. Wilcox was able to work during periods of remission. He was hospitalized in January 1983 after suffering disabilities that indicated he had multiple sclerosis. Since 1983, Wilcox has undergone numerous examinations, evaluations and hospitalizations during periods of exacerbation and remission. Because of his debilitating condition, Wilcox missed many work days. His condition progressively worsened, to the point where his union recommended that he stop working; he was subsequently laid-off. Given our reasoning in Parish, it is evident that Wilcox has been suffering from a progressive disability since 1981. Wilcox should not be penalized because he had the courage and determination to continue working despite his disabling condition.

III.

> The principles enunciated in Parish were not applied to the facts of this case.
> . . .

*Id*. at 277-78 (footnotes omitted).

> More recently, the court concisely summarized the law on this issue as follows:
>
> . . . *Wilcox* and *Parish* hold that when a claimant with multiple sclerosis applies for social security benefits, it is error to focus on periods of remission from the disease to determine whether the claimant has the ability to engage in substantial gainful employment. *Wilcox*, 917 F.2d at 278; *Parish*, 742 F.2d at 193. . . .
>
> Clearly, multiple sclerosis is a progressive disease for which there is no cure. *Parish*, 642 F.2d at 193. The disease is subject to periods of remission and exacerbation. *Id*.; *Wilcox*, 917 F.2d at 274. Nevertheless, in this circuit, multiple sclerosis is not per se disabling under the social security regulations.

*Jones v. Sec'y of Health & Human Servs.*, No. 93-1958, WL 468033 at \*\*3 (6th Cir. Aug. 29, 1994).

Applying these principles to the instant case, I suggest that although the ALJ properly limited his review of the evidence to that prior to the Plaintiff's loss of eligibility for benefits, he nonetheless at the same time improperly focused on periods of remission. The ALJ fails to consider the findings of Plaintiff's April 1998 admission to St. Joseph Mercy Hospital. (Tr. at 106.) At that time, Plaintiff was complaining of headaches and numbness in the left arm and leg. Plaintiff was found to have significant weakness on the left side and difficulty walking. (*Id*.) An MRI was abnormal, as was a spinal tap. (*Id*.) Since that time, Plaintiff has consistently complained of fatigue and weakness. (Tr. at 141, 179, 182.) Under *Wilcox* and *Parish*, I suggest that by improperly discounting Plaintiff's continuing complaints, he also improperly assessed her credibility. These same failures, I further suggest, render his hypothetical questions to the ALJ fatally defective, as they did not properly take into account the effects of Plaintiff's multiple

sclerosis. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice. It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits. In this circuit, the latter option requires that the "proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking[,]" *Mowery v. Heckler* 771 F.2d 966, 973 (6th Cir. 1985); or that "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits[.]" *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). As in *Faucher,* I suggest that no factual issues remain for determination, that the evidence adequately establishes Plaintiff's entitlement to benefits and that remand for an award of benefits is appropriate.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*,

829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                       s/ *Charles E Binder*
                                          CHARLES E. BINDER
Dated: April 13, 2006                    United States Magistrate Judge

### **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet L. Parker, and served in the traditional manner on Clifford L. Weisberg and Honorable David M. Lawson.

Dated:  April 13, 2006                          By     s/Mary E. Dobbick
                                                                      Secretary to Magistrate Judge Binder